UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MARTIN TRETOLA; THOMAS TRETOLA;
MARBLES ENTERPRISES, INC. d/b/a
T&T GUNNERY; and T&T TACTICAL, INC.,

                 Plaintiffs,            MEMORANDUM & ORDER
                                      13-CV-5705(JS)(AKT)

       -against-

JOSEPH A. D'AMICO, Superintendent
of the New York State Police;
JAMES DEWAR, New York State Police
Captain; EDWARD FRANKE, New York
State Police Investigator; JOHN
DOES #1-8, New York State Police
Investigators; JOHN DOE #9, New
York State Police Technical
Sergeant; COUNTY OF NASSAU;
KATHLEEN M. RICE, Nassau County
District Attorney; ELISE MCCARTY,
Nassau County Assistant District
Attorney; KAREN BENNETT, Nassau
County Assistant District Attorney;
CHRIS RIBANDO, Nassau County
District Attorney Chief Investigator;
and NASSAU COUNTY DISTRICT ATTORNEY
INVESTIGATOR JOHN DOES #1-8,

                 Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:        Charles H. Horn, Esq.
                      Harfenist Kraut & Perlstein, LLP
                      300 Marcus Avenue, 2nd Floor East
                      Lake Success, NY 11042

For Defendants
State Defendants:     Daniel Scott Hallak, Esq.
                      Office of the New York State
                        Attorney General
                      300 Motor Parkway, Suite 230
                      Hauppauge, NY 11788

County Defendants:   Ralph J. Reissman, Esq.
                      Nassau County Attorney's Office

SEYBERT, District Judge:

Plaintiffs Martin Tretola, Thomas Tretola, Marbles Enterprises, Inc. d/b/a T&T Gunnery, and T&T Tactial, Inc. (collectively, "Plaintiffs") commenced this action on October 17, 2013 against defendants Joseph A. D'Amico, Superintendent of the New York State Police; James Dewar, New York State Police Captain; Joseph DeMaria, New York State Police Senior Investigator; Edward Franke, New York State Police Investigator; John Does #1-8, New York State Police Investigators; John Doe #9, New York State Police Technical Sergeant (collectively, the "State Defendants"); County of Nassau ("the County"); Kathleen M. Rice, Nassau County District Attorney; Elise McCarthy, Nassau County Assistant District Attorney; Karen Bennett, Nassau County Assistant District Attorney; Charles Ribando, Nassau County District Attorney Chief Investigator (together with the County, Rice, McCarthy, Bennett, and Ribando, the "County Defendants"); and Nassau County District Attorney Investigator John Does #1-8 (collectively, "Defendants") pursuant to 42 U.S.C. §§ 1983 and 1988. Currently pending before the Court are: (1) the State Defendants' motion to dismiss (Docket Entry 22); (2) the County Defendants' motion to dismiss (Docket Entry 23); and (3) an additional motion by the County Defendants to dismiss, which is

duplicative of their first motion (Docket Entry 36).  For the
following reasons, the State Defendants' motion to dismiss is
GRANTED IN PART and DENIED IN PART, the County Defendants'
motion to dismiss is GRANTED IN PART and DENIED IN PART, and the
County Defendants' additional motion to dismiss is DENIED AS
MOOT given that it is duplicative of the first motion.

<u>BACKGROUND</u>[1]

Plaintiffs' claims stem from a 2010 investigation.
Prior to that time, in or about March 2006, the County, under
the direction of Rice, began an investigation into T&T Gunnery,
Martin Tretola's firearms store located in Seaford, New York.
(Compl. ¶ 18.)  The County ultimately brought seven misdemeanor
charges against T&T Gunnery in Nassau County District Court.
(Compl. ¶ 20.)  After a trial, the court dismissed all of the
charges.  (Compl. ¶ 20.)  Thereafter, the County and Rice
initiated a felony prosecution for reckless endangerment against
Martin Tretola.  (Compl. ¶ 21.)  That charge was also dismissed.
(Compl. ¶ 22.)  As a result, Martin Tretola and T&T Gunnery
initiated a federal lawsuit of their own against the County and
its employees.  (Compl. ¶ 23.)  That suit ended in a jury trial
in Martin Tretola's and T&T Gunnery's favor.  (Compl. ¶ 23.)

---

[1] The following facts are taken from Plaintiffs' Complaint and
the documents attached thereto and are presumed to be true for
the purposes of this Memorandum and Order.

Plaintiffs allege that Defendants then began an investigation into T&T Gunnery in 2010 in retaliation for the prior suit. (Compl. ¶ 24.) Specifically, Defendants held meetings and arranged to purchase semi-automatic rifles from T&T Gunnery and other stores as part of a plan to prosecute individuals and stores for selling rifles that were in violation of New York Penal Law Section 265(22). (Compl. ¶¶ 25-26.) According to the Complaint, Defendants selected rifles to purchase based upon characteristics that they erroneously alleged made the rifles illegal. (Compl. ¶ 30.)

After the purchase of the rifles, "Defendants began to modify, alter, deface and change one, some or all of the purchased rifles to convert them from legal to illegal under Penal Law § 265(22)." (Compl. ¶ 34.) Specifically, Defendants used unknown tools to modify the rifles and alter them in such a way as to display characteristics of an illegal weapon. (Compl. ¶¶ 35-39.) Although the Complaint does not specify the particular individuals who modified the weapons, the modifications and alterations were performed in the presence of DeMaria and with the knowledge and/or instruction of Defendants. (Compl. ¶¶ 42-43.) These altered and modified semi-automatic rifles were then used to acquire a search warrant. (Compl. ¶ 50.)

On February 17, 2011, Defendants conducted a raid on T&T Gunnery and seized semi-automatic rifles. (Compl. ¶¶ 57, 63.) That same day, Plaintiffs were arrested and ultimately charged with multiple felonies and misdemeanors. (Compl. ¶¶ 52-55, 59.) Martin Tretola and Thomas Tretola were barred from purchasing or selling guns as a result of their arrest and prosecution. (Compl. ¶ 65.) Plaintiffs allege that "[d]espite knowing that the alleged illegal conduct engaged in by Plaintiffs was entirely lawful and based upon doctored evidence, all Defendants knowingly, willfully and intentionally initiated criminal proceedings against Plaintiffs on the fabricated evidence and false charges, causing Plaintiffs damages, including loss of business opportunity and severe emotional distress." (Compl. ¶ 74.)

Defendants presented their case to the Grand Jury. (Compl. ¶ 75.) In so doing, Defendants used altered rifles to support their case and members of the County and some of the individually named Defendants testified in front of the Grand Jury. (Compl. ¶¶ 76-77.) The Grand Jury dismissed all of the charges. (Compl. ¶ 78.)

Plaintiffs allege the following claims: (1) false arrest as against all Defendants; (2) malicious prosecution as against all Defendants; (3) First Amendment retaliation as against all Defendants; (4) failure to supervise as against the

5

County; (5) failure to supervise as against D'Amico and Dewar; (6) _Monell_ liability as against the County and Rice; (7) violation of Plaintiffs' Second Amendment rights as against all Defendants; and (8) legal fees against all Defendants.

DISCUSSION

Both the State Defendants and the County Defendants now move to dismiss. The Court will first address the applicable legal standard before turning to the respective motions. Where appropriate, the Court will provide a singular discussion of the motions and issues.

## I. Legal Standard

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." _Ashcroft v. Iqbal_, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); _accord_ _Harris v. Mills_, 572 F.3d 66, 71-72 (2d Cir. 2009). _First_, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." _Iqbal_, 556 U.S. at 678; _accord_ _Harris_, 572 F.3d at 72. _Second_, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. _Iqbal_, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

## II. Analysis

The State and County Defendants move to dismiss on several grounds. Notably, both motions address claims that Plaintiffs either do not intend to pursue, or did not raise in the Complaint. Some of these claims will be discussed infra. At this juncture, though, the Court notes that Plaintiffs have not raised any due process or conspiracy claims in the Complaint. (Pls.' Opp. Br. to State Defs.' Mot., Docket Entry 38, at 18.) Moreover, Plaintiffs concede that they cannot pursue their cause of action under the Second Amendment as currently pled. (Pls.' Opp. Br. to State Defs.' Mot. at 7-8; Pls.' Opp. Br. to County Defs.' Mot., Docket Entry 36-2, at 15.) Accordingly, the State and County Defendants' respective motions to dismiss Plaintiffs' claim for violation of their Second Amendment rights is GRANTED, and such claim is DISMISSED WITHOUT PREJUDICE.

The Court thus turns to the motions.

### A. Immunity

Both the State and County Defendants move to dismiss based upon immunity. The State Defendants assert that the Eleventh Amendment bars Plaintiffs' claims against the State, the New York State Police, and the individual State Defendants

sued in their official capacities.  Like some of the claims just
mentioned, however, Plaintiffs are not bringing such claims and
any allegations against the individual State Defendants are
against them in their individual capacities only.  (Pls.' Opp.
to State Defs.' Mot. at 17.)  Accordingly, the Court will not
address this argument further as it is inapplicable to the case
at bar.

Similarly, though, the County Defendants assert that
they are entitled to absolute prosecutorial immunity.  (County
Defs.' Br., Docket Entry 23-1, at 4-10.)  Absolute immunity
extends to claims against government officials in their official
capacities that arise out of their performing functions
"analogous to those of a prosecutor."  Butz v. Economou, 438
U.S. 478, 515, 98 S. Ct. 2894, 2915, 57 L. Ed. 2d 895 (1978);
see also Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).  In
determining whether a government official is immune from suit,
"the courts are to apply a 'functional approach,' examining 'the
nature of the function performed, not the identity of the actor
who performed it.'"  Doe v. Phillips, 81 F.3d 1204, 1209 (2d
Cir. 1996) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 269,
113 S. Ct. 2606, 125 L. Ed. 2d 209) (1993)).

In other words, "when a prosecutor functions as an
administrator . . . [or] performs the investigative functions
normally performed by a detective or police officer, he is

eligible only for qualified immunity." Smith v. Garretto, 147
F.3d 91, 94 (2d Cir. 1998) (internal quotation marks and
citation omitted) (alterations in original).  The Supreme Court
has held, for example, that the filing of a criminal complaint
is entitled to absolute immunity, see Imbler v. Pachtman, 424
U.S. 409, 431, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976); see
also Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987), whereas
absolute immunity does not extend to functions that are
typically performed by police officers or investigative agents,
see, e.g., Kalina v. Fletcher, 522 U.S. 118, 129-30, 118 S. Ct.
502, 509, 139 L. Ed. 2d 471 (1997) (holding that a prosecutor
was not entitled to prosecutorial immunity for a sworn affidavit
filed in support of an application for an arrest warrant,
because the prosecutor was "perform[ing] an act that any
competent witness might have performed"); Burns v. Reed, 500
U.S. 478, 493, 111 S. Ct. 1934, 1943, 114 L. Ed. 2d 547 (1991)
(stating that a prosecutor was not entitled to prosecutorial
immunity for advising the police in the investigative phase of a
criminal case).

      Here, the County Defendants performed several
functions.  See East Coast Novelty Co., Inc. v. City of N.Y.,
809 F. Supp. 285, 291-92 (S.D.N.Y. 1992) (delineating between
different functions of the defendants).  For example, insofar as
Plaintiffs lodge a malicious prosecution claim against the

County Defendants, it is apparent that the County Defendants are entitled to absolute immunity in that regard. Courts have made clear that the decision whether to commence or continue a prosecution is made solely within the prosecutorial function and therefore is protected by absolute immunity. See, e.g., Shmueli v. City of N.Y., 424 F.3d 231, 236 (2d Cir. 2005) (noting that a prosecutor who pursues a criminal prosecution is immune from a Section 1983 suit); Fox v. City of N.Y., No. 03-CV-2268, 2004 WL 856299, at *11 (S.D.N.Y. Apr. 20, 2004) ("The malicious prosecution claim against [defendant] also must be dismissed because '[a] prosecutor has absolute immunity in connection with the decision whether to commence prosecution.'" (quoting Covington v. City of N.Y., 916 F. Supp. 282, 287 (S.D.N.Y. 1996)). Accordingly here, the County Defendants are entitled to absolute immunity for their actions in prosecuting Plaintiffs, including the Grand Jury proceedings. As such, the County Defendants' motion to dismiss Plaintiffs' malicious prosecution claim against them is GRANTED, and such claim is DISMISSED WITH PREJUDICE.

As to Plaintiffs' additional claims against the County Defendants, however, it is not clear what function the County Defendants played, and the Court therefore cannot determine whether they are entitled to absolute immunity at this stage. For example, it is not apparent what role, if any, the County

Defendants played in Plaintiffs' arrest. Likely, the County Defendants were not involved in the arrest at all. See Fox, 2004 WL 856299, at *11 ("It is, of course, highly doubtful that [defendant], who heads one of the largest prosecutorial offices in the nation, played any role in the run-of-the-mill arrests at issue in this case."). Moreover, while it seems that the County Defendants would not be entitled to absolute immunity for the roles they played in the investigation, the Complaint does not provide enough detail for the Court to definitively come to such a conclusion.[2] See Smith, 147 F.3d at 94 (citing planning and executing a raid as an example of activity that is not entitled to absolute immunity). Thus, the County Defendants' motion to dismiss based on absolute immunity is GRANTED only as to Plaintiffs' claim against them for malicious prosecution; it is otherwise DENIED in this regard.

B. First Amendment Retaliation

The State and County Defendants also respectively move to dismiss Plaintiffs' claim for First Amendment retaliation, arguing, inter alia, that Plaintiffs have failed to state a claim.[3] The Court disagrees.

---

[2] Although the County Defendants may be entitled to qualified immunity, even if absolute immunity does not apply, they have not moved on this ground.

[3] The County Defendants also assert that they are entitled to absolute immunity on Plaintiffs' First Amendment retaliation

Generally, a private citizen bringing a First Amendment retaliation claim must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Here, the State and County Defendants primarily argue that Plaintiffs have not sufficiently alleged any "actual chill."

However, despite the elements of a First Amendment retaliation claim, the Second Circuit has noted that "'in certain cases involving public official/private citizen retaliation claims'--the context most applicable to this case-- it has 'seemingly not imposed a subjective chill requirement where some other harm is asserted.'" Soundview Assocs. v. Town of Riverhead, 973 F. Supp. 2d 275, 295 (E.D.N.Y. 2013) (quoting Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004)). For example, where a plaintiff can allege a non-speech injury, such as noise pollution, the Second Circuit has held that proof of a chill is unnecessary. See Gagliardi v. Vill. of Pawling, 18 F.3d 188, 190 (2d Cir. 1994); see also Schubert v. City of Rye,

claim. (County Defs.' Br. at 17-18.) However, to the extent that Plaintiffs claim that the County Defendants retaliated against them due to their involvement in the investigation and other such functions, the County Defendants are not entitled to absolute immunity.

775 F. Supp. 2d 689, 711-12 (S.D.N.Y. 2011) (finding that the plaintiffs "need not demonstrate actual chilling of speech" because they alleged retaliatory failure to enforce local land-use regulations and correct property damage).

Here, Plaintiffs--at least plausibly--allege a harm to the business.  Specifically, they allege that Martin and Thomas Tretola were barred from purchasing or selling guns as a result of their arrests and prosecutions.  (See Compl. ¶ 65.)  Neither the parties nor the Court could identify any cases in the Circuit specifically finding that harm to a business is sufficient to overcome subjective chill.  Such a finding, however, does not appear to be inconsistent with Circuit precedent.  Cf. Brink v. Muscente, No. 11-CV-4306, 2013 WL 5366371, at *8 (S.D.N.Y. Sept. 25, 2013) (finding that the plaintiff's allegation of retaliatory criminal prosecutions was sufficient); Delarosa v. U.S., No. 11-CV-0368, 2013 WL 2295665, at *8 (N.D.N.Y. May 24, 2013) (Plaintiff does not "appear to allege concrete harm, unless she can show a tangible injury to some interest she holds in the store, arising from conduct by [defendants] in retaliation for her September 20, 2010 statements." (emphasis added)); Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 431-32 (S.D.N.Y. 2013) ("Here, Plaintiff has alleged various injuries resulting from Defendants' retaliatory conduct, including harm to his

13

professional reputation, temporary modifications of his job responsibilities, further harassment and intimidation by Defendants and economic and pecuniary loss."); Pflaum v. Town of Stuyvesant, 937 F. Supp. 2d 289, 308 (N.D.N.Y. 2013) (denying a motion to dismiss where the plaintiff alleged "the loss of his business permit, and consequently, the loss of business income"). Accordingly, the Court finds that Plaintiffs have alleged enough to pursue their First Amendment retaliation claim against the State and County Defendants.

The State Defendants--and to a certain extent, the County Defendants--additionally assert that Plaintiffs have not sufficiently alleged a nexus between Plaintiffs' exercise of their First Amendment right and the investigation or any subsequent harm. Defendants seem to be asserting that Plaintiffs have not alleged that Defendants' actions were substantially motivated by Plaintiffs' speech in bringing the 2007 action against the County. The Court agrees that the connection between Plaintiffs' prior action against the County and its employees presents a somewhat tenuous connection as it pertains to the State Defendants. Nonetheless, Plaintiffs have alleged that, following that action, the State and County Defendants essentially began an investigation and a campaign to target the business as a form of retribution. "[M]atters [such as defendants' motivation] are required only to be 'averred

generally' in a complaint, and need not be pled with specificity." <u>Puckett v. City of Glen Cove</u>, 631 F. Supp. 2d 226, 240-41 (E.D.N.Y. 2009). Indeed, alleging motivation with specificity would be difficult. <u>See Gagliardi</u>, 18 F.3d at 195. Accordingly, the State Defendants' motion to dismiss the First Amendment retaliation claim on this ground--and the County Defendants' motion to the extent that they raise this issue--is DENIED.

C. <u>False Arrest</u>

Next, the State Defendants move to dismiss Plaintiffs' false arrest claims, primarily on the grounds that they had probable cause to arrest due to a warrant and they are protected by qualified immunity.[4] The Court disagrees. Although the Complaint alleges a false arrest claim against the County Defendants as well, the County Defendants have not argued for dismissal of the false arrest claim specifically.

1. <u>Probable Cause</u>

It is well established that "'[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause.'" <u>Williams v. Town of Greenburgh</u>, 535 F.3d 71, 78-79 (2d Cir. 2008) (quoting <u>Singer v. Fulton</u>

---

[4] The State Defendants also raise issues regarding personal involvement in connection with the false arrest claim. (State Defs.' Br., Docket Entry 22-3, at 11-12.) The Court will address these arguments in the failure to supervise section <u>infra</u>.

Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)).  Thus, "[w]here an arrest is made pursuant to a warrant, there can be no claim for false arrest or unlawful imprisonment."  Jones v. Trump, 971 F. Supp. 783, 788 (S.D.N.Y. 1997).  "'Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause.'"  Quinoy v. Pena, No. 13-CV-1945, 2014 WL 1998239, at *8 (S.D.N.Y. May 14, 2014) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)).

Here, though, the State Defendants rely on the presence of a search warrant to argue that there was probable cause to arrest.  A search warrant does not create probable cause to arrest.  See Kamara v. City of N.Y., No. 03-CV-0337, 2005 WL 3113423, at *5 (E.D.N.Y. Nov. 21, 2005) ("This argument fails . . . because although a valid warrant existed in the present case, the warrant was a search warrant, not an arrest warrant . . . ." (emphasis in original)).  The Complaint here is somewhat vague as to the exact sequence of events.  It is possible that, upon conducting the search, the State Defendants discovered "'confirmatory' merchandise" and had probable cause to arrest.  See 5 Borough Pawn, LLC. v. Marti, 753 F. Supp. 2d 186, 198 (S.D.N.Y. 2010).  However, the State Defendants assert only that the search warrant "broke the causal link" and

Plaintiffs allege that there, in fact, was no "confirmatory merchandise." (See State Defs.' Br. at 13.) Thus, at this stage, given that a search warrant alone does not equate to probable cause to arrest, the State Defendants' motion in this regard is DENIED.

### 2. Qualified Immunity

However, the State Defendants also argue that they are entitled to qualified immunity on Plaintiffs' false arrest claim. Even if a defendant arrested a plaintiff without a warrant and without probable cause, a defendant is entitled to qualified immunity if there is "arguable probable cause" to arrest. See Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Escalera, 361 F.3d at 743 (quoting Golino, 950 F.2d at 870); see also Cerrone v. Brown, 246 F.3d 194, 202-03 (2d Cir. 2001) ("Arguable probable cause exists 'when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well

established law.'" (quoting Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) (emphasis in original)).

The State Defendants assert that "since there was a search warrant in place, a reasonable officer standing in the shoes of [the] State Defendants could have believed that there was probable cause for the arrest." (State Defs.' Br. at 14.) However, as previously stated, a search warrant does not necessarily indicate any probable cause to arrest, see supra p. 16, even though it may suggest some objective reasonableness, see Seitz v. DeQuarto, 777 F. Supp. 2d 492, 503 (S.D.N.Y. 2011). Furthermore, Plaintiffs allege that Defendants obtained the search warrant through modifying what were previously legal guns in order to make them illegal, thus essentially fabricating evidence. (See Compl. ¶ 50.) No reasonable officer could believe that he had probable cause in such a situation as currently alleged. Of course, the evidence may reveal that Plaintiffs' allegations are meritless and that Defendants appropriately believed that the guns were illegal and that they did not modify any weapons. At this stage, the Court cannot say definitively that the State Defendants are entitled to qualified immunity. See Kanciper v. Lato, --- F. Supp. 2d ----, 2013 WL 5963080, at *11 (E.D.N.Y. Nov. 7, 2013) (denying motion to dismiss on qualified immunity grounds where the plaintiff alleged, inter alia, that the defendant obtained search warrants

without authority); <u>Anilao v. Spota</u>, 774 F. Supp. 2d 457, 492-93 (E.D.N.Y. 2011) (holding that the court was unable to decide qualified immunity where the plaintiffs had alleged that defendants fabricated evidence and prosecuted plaintiffs knowing that they had not committed a crime). Therefore, their motion to dismiss on this ground is DENIED.

D. <u>Malicious Prosecution</u>

The Court has already found that the County Defendants are entitled to absolute immunity on Plaintiffs' malicious prosecution claim against them. As to the State Defendants, they argue that there is no causal connection between the State Defendants' conduct and Plaintiffs' injury. (State Defs.' Br. at 12.) The Court disagrees.

To succeed on a claim for malicious prosecution under Section 1983, Plaintiffs must show: (1) Defendants initiated a criminal proceeding against them, (2) Defendants lacked probable cause to believe that the proceeding could succeed, (3) the criminal proceeding was instituted in malice, and (4) the criminal proceeding terminated in Plaintiffs' favor. <u>See</u> <u>Cook v. Sheldon</u>, 41 F.3d 73, 79 (2d Cir. 1994); <u>see</u> <u>also</u> <u>Boyd v. City of N.Y.</u>, 336 F.3d 72, 75 (2d Cir. 2003). The State Defendants assert that the Complaint fails to allege that the State Defendants were involved in, or had any influence over, the prosecution process or whether to grant individuals other than

Plaintiffs an Adjournment in Contemplation of Dismissal ("ACOD"). (State Defs.' Br. at 13.) Thus, they essentially seem to challenge the first element of a malicious prosecution claim.

"In malicious prosecution cases against police officers, plaintiffs have met this first element by showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint." Llerando-Phipps v. City of N.Y., 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005) (internal citations omitted). Here, Plaintiffs have alleged that "Defendants," using that term as against both the State and County Defendants, filed sworn felony complaints against Plaintiffs (Compl. ¶¶ 100-03) and altered evidence to create illegal weapons (Compl. ¶¶ 33-50), amongst other activities. Either theory presents the requisite initiation of criminal proceedings and, thus, the "causal connection." See Felmine v. City of N.Y., No. 09-CV-3768, 2011 WL 4543268, at *11 (E.D.N.Y. Sept. 29, 2011) (finding that allegation that officer signed the sworn criminal court complaint was sufficient to survive summary judgment against malicious prosecution claim); Llerando-Phipps, 390 F. Supp. 2d at 383 ("'[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and

forwards that information to prosecutors.'" (quoting <u>Brome v.</u>
<u>City of N.Y.</u>, No. 02-CV-7184, 2004 WL 502645, at *5-6 (S.D.N.Y.
Mar. 15, 2004)); <u>Cox v. Cnty. of Suffolk</u>, 827 F. Supp. 935, 938
(E.D.N.Y. 1993) (allegation that police officer defendant swore
to and subscribed a felony complaint was sufficient to show
initiation of criminal proceedings).  In particular, Plaintiffs
allege that the gun modification occurred in the presence of
State Defendant DeMaria (Compl. ¶ 42) in order to support a
prosecution (Compl. ¶ 48).  Such allegations, though minimal,
are sufficient at this stage.

       As the State Defendants have not otherwise challenged
the malicious prosecution claim, their motion to dismiss in this
regard is DENIED.

   E. <u>Failure to Supervise and Municipal Liability</u>

       1. <u>Failure to Supervise</u>

       Plaintiffs allege failure to supervise claims against
State Defendants D'Amico and Dewar as well as against the
County.

       Although "'[i]t is well settled in this Circuit that
personal involvement of defendants in alleged constitutional
deprivations is a prerequisite to an award of damages under
§ 1983,'" <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995)
(quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994));
<u>Iqbal</u>, 556 U.S. at 676 ("[A] plaintiff must plead that each

21

Government-official defendant, through the official's own individual actions, has violated the Constitution."), a supervisory official can nonetheless be held liable if he "participated directly in the alleged constitutional violation [or] . . . created a policy or custom under which [the] unconstitutional practices occurred, or allowed the continuance of such a policy or custom," Colon, 58 F.3d at 873. Notably, the Second Circuit in Colon listed five ways that a plaintiff can establish liability--not just the two listed--including failure to remedy a wrong after being informed of the violation, grossly negligent supervision of subordinates who committed the wrongful acts, and deliberate indifference to the rights of inmates. 58 F.3d at 873. However, the "continuing vitality" of these additional methods has "engendered conflict within our Circuit" due to the Supreme Court's decision in Iqbal. Reynolds v. Barrett, 685 F.3d 193, 205 n.14 (2d Cir. 2012). This Court has concluded that only personal involvement and a custom or practice survive as viable bases for supervisory liability. See Butler v. Suffolk Cnty., 289 F.R.D. 80, 95 n.8 (E.D.N.Y. 2013).

As to D'Amico and Dewar, the Complaint appears to allege two bases for supervisory liability: (1) that D'Amico and Dewar were aware of the constitutional violations but failed to take action, and (2) it was the policy, custom, and practice of D'Amico and Dewar to allow or ignore violations of the Second,

Fourth, Fifth, and Fourteenth Amendments. (See Compl. ¶¶ 144-46, 156.) Neither theory saves them from the State Defendants' motion to dismiss. First, as previously stated, failure to remedy a wrong after being informed of the violation has been rejected by this Court as a viable theory after Iqbal. See supra p. 22.

Second, Plaintiffs' allegations of a policy or custom on the part of D'Amico and Dewar are conclusory at best. The Complaint recites boilerplate language regarding a policy or custom, but provides no factual allegations in support. See Roberites v. Huff, No. 11-CV-0521, 2012 WL 1113479, at *7 (W.D.N.Y. Mar. 30, 2012) ("Mere boilerplate assertions that a municipality has such a custom or policy, which resulted in a deprivation of the plaintiff's rights, do not rise to the level of plausibility." (internal quotation marks and citation omitted)); Zembiec v. Cnty. of Monroe, 766 F. Supp. 2d 484, 498 (W.D.N.Y. 2011) (finding conclusory allegations without factual support to be insufficient). While it alludes to other businesses, and perhaps individuals, who were part of an investigation, the Complaint contains little regarding the particular unconstitutional acts committed against them. As currently drafted, the Complaint merely discusses the constitutional violations against Plaintiffs, which is insufficient to assert a policy or custom.

While these are the only two theories explicitly set forth in the section of the Complaint addressing Plaintiffs' supervisory liability claim against D'Amico and Dewar, parts of the Complaint also discuss potential personal involvement by D'Amico and Dewar. Again, however, Plaintiffs' allegations are deficient. The Complaint, at best, asserts that Dewar was involved in the investigation. (Compl. ¶ 24.) It does not identify D'Amico or Dewar as modifying or altering any weapons, participating in the arrest, participating in the prosecution, or performing any other acts that would specifically connect their personal involvement to a constitutional violation. Accordingly, the State Defendants' motion to dismiss Plaintiffs' supervisory liability claim against D'Amico and Dewar is GRANTED and such claim is DISMISSED WITHOUT PREJUDICE.

Similarly, Plaintiffs allege a supervisory liability claim against the County. The Complaint alleges that: (1) the County failed to supervise and/or train Rice and her subordinates (Compl. ¶¶ 130, 135), (2) the County and Rice were aware of fabricated evidence and false statements but failed to remedy the situation (Compl. ¶¶ 131-32), and (3) the County and Rice had a policy, practice, and custom of allowing or ignoring violations of the Second, Fourth, Fifth, and Fourteenth Amendments (Compl. ¶¶ 133-34). As already stated, awareness and failure to remedy is not a viable theory. See supra p. 22.

Likewise, deficient supervision or training falls within the deliberate indifference Colon factor, which this Court has also rejected. See Vazquez-Mentado v. Buitron, --- F. Supp. 2d ----, 2014 WL 318329, at *5 (N.D.N.Y. Jan. 29, 2014) ("Claims premised on putatively deficient supervision and/or training are generally analyzed pursuant to the deliberate indifference Colon factor.").

Moreover, like the policy and custom allegations against D'Amico and Dewar, Plaintiffs' allegations as to the County are equally conclusory and lack factual support. What is more, Rice's personal involvement, if any, is lacking as--like Dewar--the Complaint specifies only that she was involved in the investigation. (Compl. ¶ 24.) Thus, for the same reasons that Plaintiffs' supervisory liability claim against D'Amico and Dewar fails, Plaintiffs' supervisory liability claim against the County fails as well.

2. Monell Liability

Finally, Plaintiffs also assert a claim against the County for Monell liability.

A municipality such as the County cannot be held liable under Section 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). To prevail on a

Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, --- U.S. ---, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)), cert. denied, --- U.S. ----, 132 S. Ct. 1741, 182 L. Ed. 2d 528 (2012); see also Monell, 436 U.S. at 690-91. "Local governing bodies . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91 (internal citations omitted).

Supervisory liability and Monell liability are independent concepts. See Kucera v. Tkac, No. 12-CV-0264, 2013 WL 1414441, at *4 (D. Vt. Apr. 8, 2013). Nonetheless, Plaintiffs' claim against the County pursuant to Monell fails because, like the supervisory liability claim, the Complaint does not sufficiently allege any custom or policy. Like other portions of the Complaint, the section regarding municipal liability conclusorily states that "[t]he COUNTY and RICE officially adopted or promulgated a policy to enforce laws by the COUNTY where gun store owners and employees in Nassau County were harassed for lawful conduct during a 10 month probing investigation." (Compl. ¶ 167.) Plaintiffs also allege that

"[u]pon information and belief, the NCDAO and NYSPD created an inter-governmental agency custom or practice where they raided local gun stores and arrested owners and employees without probable cause or valid arrest warrants in violation of their civil rights." (Compl. ¶ 169.) Once again, while the Complaint implies that others were involved in the investigation, and indicates that others received an ACOD, it does not contain enough to sufficiently state a policy or custom. Accordingly, the County Defendants' motion to dismiss the Monell claim is GRANTED, and such claim is DISMISSED WITHOUT PREJUDICE.

III. Leave to Replead

Finally, although Plaintiffs have not requested leave to replead, courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

As to Plaintiffs' claims that were dismissed without prejudice, the Court finds that Plaintiffs could plausibly state

a claim.  If Plaintiffs intend to file an Amended Complaint, they must do so within thirty (30) days of the date of this Memorandum and Order.  If they do not do so, only the claims that have survived the pending motions addressed herein will continue.

## CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Likewise, the County Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Both motions are GRANTED as to Plaintiffs' claims for violation of their Second Amendment rights and for supervisory liability, and such claims are DISMISSED WITHOUT PREJUDICE.  In addition, the County Defendant's motion to dismiss the claim for Monell liability is also GRANTED, and that claim is also DISMISSED WITHOUT PREJUDICE.  Finally, the County Defendants' motion to dismiss Plaintiffs' malicious prosecution claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE.  Both motions are otherwise DENIED.

As to those claims that have been dismissed without prejudice, Plaintiffs are GRANTED leave to replead.  If they choose to do so, they must file an Amended Complaint within thirty (30) days of the date of this Memorandum and Order. Failure to do so will mean that these claims will be dismissed

with prejudice and only the claims surviving this Memorandum and Order will proceed.

Finally, the County Defendants' additional motion to dismiss is DENIED AS MOOT given that it is duplicative of the first motion.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     July __1__, 2014
           Central Islip, NY